**SO ORDERED.**

**SIGNED this 2nd day of May, 2025.**



_Mitchell L. Herren_
Mitchell L. Herren
United States Bankruptcy Judge

---

DESIGNATED FOR ONLINE PUBLICATION

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | |
| **LINDA LEE STUTSMAN** | **Case No. 24-10207** |
| **Debtor.** | **Chapter 7** |

### Memorandum Opinion Sustaining Trustee's Objections to Exemption and Granting in Part Trustee's Motion for Turnover

Debtor claims the proceeds of a legal malpractice settlement are exempt from her bankruptcy estate. Before the Court are the Chapter 7 Trustee Darcy D. Williamson's objections to Debtor's claimed exemption and the Trustee's motion for turnover of those proceeds. Because the Court finds no basis for exemption of the settlement of the legal malpractice claim, the Court sustains the Trustee's objections to exemption. The Court also concludes the settlement funds are not excluded from property of the estate and are otherwise subject to turnover, and therefore grants the Trustee's motion for turnover as to the entire postpetition

amount and the unaccounted-for portion of the prepetition amount from the settlement.[1]

## I.    Background and Findings of Fact[2]

Debtor was born on May 16, 1948. She has been diagnosed with multiple chronic medical conditions, including Alzheimer's dementia, chronic lumber back pain, depression, and other health conditions. Debtor's memory is impaired due to these disease processes and the treatment and medications therefor.[3]

About ten years prepetition, on September 22, 2014, Debtor was injured in an employment accident. With regard to her employment-related injury, Debtor hired attorney Terry J. Malone of Williams-Malone, P.A., Dodge City, Kansas. Mr. Malone filed a claim on behalf of Debtor under the Kansas Workers Compensation Act (KWCA) but failed to bring the matter to hearing within the statutory timeframe to do so, preventing Debtor from recovering directly under the KWCA.

At some point, Debtor retained attorney Shirla McQueen of Sharp McQueen, P.A., who made a demand on Mr. Malone and Williams-Malone, P.A. for professional negligence in allowing the worker's compensation matter to lapse.

---

[1] The Trustee appears by counsel J. Michael Morris of Klenda Austerman LLC. Debtor appears by Dana Manweiler Milby of Milby Law Offices, P.A.

[2] The parties filed joint Stipulations of Fact, Doc. 48, which form the basis of these Findings of Fact. The Court takes other background and procedural facts from the docket of this matter. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[A] court may . . . take judicial notice, whether requested or not (Fed. Rules Evid. Rule 201) of its own records and files.").

[3] Debtor's Brief in Opposition, Doc. 50, includes as Exhibit 15, the transcript of the August 6, 2024, examination of Debtor by the Trustee. In that transcript, Debtor at times indicates she cannot remember certain transactions or why identified dollar amounts appear in her Schedules or bank statements, but at other times recounts details of her expenditures including how and why she spent the money she did.

2

Debtor's attorney, Ms. McQueen, obtained a Medicare Set Aside analysis for Debtor, which was prepared on December 20, 2023. The Medicare Set-Aside analysis estimated future medical expenses for Debtor, after mitigation, of $23,560.03.[4]

A settlement was then reached before suit was filed in the professional negligence matter, and on January 19, 2024, Debtor, Mr. Malone, and Williams-Malone, P.A. signed a Release Agreement, reflecting that settlement. Under the Release Agreement, Williams-Malone, P.A. agreed to pay Debtor three amounts: (1) $22,273.26 "to compensate [Debtor] for permanent impairment caused by the accident," (2) $2500 "to compensate [Debtor] for the costs incurred in obtaining a Medicare Set-Aside analysis," and (3) "any future medical expenses which are causally related to the accident" or, alternatively, $23,560.06 for "funding a Medicare Set Aside Trust in [such] amount . . . or by purchasing an annuity for this amount."[5]

On February 5, 2024, Williams-Malone, P.A. wrote a check for $24,773.26, made out to both Debtor and Sharp McQueen, P.A. The $24,773.26 figure is the total of the $22,273.26 compensation for permanent impairment and the $2500 compensation for the cost of the Medicare Set-Aside analysis. Ten days later, on February 15, 2024, Sharp McQueen, P.A. disbursed to Debtor the sum of $16,621.43 via check, with the notation "net indemnity settlement."[6]

---

[4] Doc. 48 Ex. 3 p. 2.

[5] *Id.* Ex. 2 ¶¶ 1-3.

[6] *Id.* Ex. 4.

3

Debtor cashed the $16,621.43 check, date unknown, and took the proceeds as cash. Of the $16,621.43, Debtor can itemize her expenditure of $12,291.76. Debtor itemizes the following amounts: $950 to Ms. Milby, Debtor's bankruptcy attorney, $736.02 for car insurance, $4189.34 for furniture, $800 on clothing, $500 for groceries, $160 for a trip to visit Debtor's brother who was gravely ill, $800 deposited in Debtor's bank account to cover the cost of items purchased online, $3506.40 for dental work, and $650 for household goods. The remaining $4329.67 of the $16,621.43 is unaccounted for.

About five weeks after receiving the check from Sharp McQueen, P.A., on March 26, 2024, Debtor filed a Chapter 7 bankruptcy petition. In her Schedule A filed with that petition, Debtor disclosed zero dollars of cash on hand and a checking account at Landmark National Bank holding $53, with the notation "all social security and pension."[7] In the Statement of Financial Affairs filed with her petition, Debtor listed $1372.45 in income from 2024 from a "settlement,"[8] and listed a concluded "legal malpractice" case against "William Malone" in her legal actions pending in the prior year,[9] but that is the only mention of the settlement or the money she received therefrom. Although periodic payments to Ms. Milby, Debtor's

---

[7] Doc. 1 p. 10 ¶ 16-17.

[8] *Id.* p. 34 ¶ 5.

[9] *Id.* p. 35 ¶ 9.

bankruptcy counsel, are listed as occurring over the prior year, the specific amount of $950 itemized above is not listed.[10]

About three weeks postpetition, on April 16, 2024, Williams-Malone, P.A. wrote a check for $23,560.06, again made out to both Debtor and Sharp McQueen, P.A. A month later, on May 14, 2024, Sharp McQueen, P.A. disbursed to Debtor that total sum ($23,560.06) via check, with the notation "proceeds from Terry Malone."[11] Again, Debtor cashed this check, date unknown. From the $23,560.06, Debtor purchased, on May 21, 2024, a $20,000 certificate of deposit from Landmark National Bank, where Debtor also has a savings and checking account.[12] Debtor knows she used a portion of the remainder of the $23,560.06 to visit her terminally ill son, but otherwise is generally unable to account for the $3560.06 remaining of the $23,560.06.

Debtor received a discharge in her Chapter 7 case on July 3, 2024. A few weeks later, on July 29, 2024, Debtor amended her Schedule A/B and Statement of Financial Affairs. The amended Schedule A/B lists two accounts at Landmark National Bank: a savings account with zero balance and the checking account with $53 that was previously disclosed.[13] For the first time, Debtor also disclosed a

---

[10] *Id.* p. 36 ¶ 16 (listing payments to Ms. Milby of $867 on March 11, 2024, $233 on February 6, 2024, $300 on January 22, 2024, $300 on November 13, 2023, $300 on July 14, 2023, $500 on May 9, 2023, and $250 on April 3, 2023).

[11] Doc. 48 Ex. 7.

[12] The certificate of deposit matured at seven months, on December 21, 2024. It is unclear how the funds are currently held now that the maturity date has passed.

[13] Doc. 24 p. 5 ¶ 17.

5

"Medicare Set Aside Trust" with a value of $23,560.06.[14] That entry also included the following information: "These funds are required by Medicare to be held in trust for future medical cost[s] for [Debtor]. [Debtor] is only allowed to use this money on medical expenses. At any time, Medicare can audit the bank account [Debtor] is to set up with just this money in the account."[15] The amended Statement of Financial Affairs lists $16,621.43 for additional income in 2024, and states "Settlement of worker's comp/malpractice claim against Terry J Malone."[16]

The Chapter 7 Trustee then filed a motion for turnover. In the motion, the Trustee sought turnover of both the $23,560.06 received by Debtor postpetition and the prepetition amount of $16,621.43.[17] Debtor objected to turnover of both amounts. Regarding the $23,560.06, Debtor argued a Medicare Set-Aside trust is not property of the bankruptcy estate and Debtor held only legal title to the funds, and regarding the $16,621.43, Debtor argued the funds were received and spent prepetition.[18]

Debtor then again amended her Schedule A/B on October 2, 2024. The two accounts at Landmark National Bank remained the same, but this time additional information was provided along with the $23,560.06 disclosed as a "Medicare Set Aside Trust." The Schedule A/B as amended stated:

---

[14] *Id.* p. 6 ¶ 30.

[15] *Id.*

[16] *Id.* p. 10 ¶ 5.

[17] Doc. 25. At the time the motion was filed, Debtor could not account for the $16,621.43 received prepetition. The Trustee sought turnover of either the full amount or, alternatively, the amounts the Trustee alleged were deposited postpetition in Debtor's checking account from that $16,621.43.

[18] Doc. 28.

6

> These funds are proceeds from a worker's comp settlement and are required by Medicare to be held in trust for future medical cost[s] for [Debtor]. [Debtor] is only allowed to use this money on medical expenses. At any time, Medicare can audit the bank account [Debtor] is to set up with just this money in the account. In the event the Medicare Set Aside Trust is held to be invalid, the funds are being claimed exempt as workers compensation proceeds.[19]

Debtor then amended her Schedule C to claim an exemption of the claimed Medicare Set Aside Trust, with value $23,560.06, under Kan. Stat. Ann. § 44-514 and § 60-2313(a)(3)[20] —both relating to exemption of worker's compensation. At that point, Debtor had not amended her Schedule C to claim the $16,621.43 she received prepetition as exempt.

The Chapter 7 Trustee then filed an objection to Debtor's claimed exemption of the $23,560.06. The Trustee's objection argued that factually the funds were not in a Medicare Set Aside Trust and were not worker's compensation funds, as they were a settlement of a legal malpractice claim. The parties agreed to stipulate to facts for the Trustee's motion for turnover and objection to exemption and brief the issues.

Regarding the $20,000 certificate of deposit purchased from the $23,560.06, the stipulation of the parties provides that no formal trust document exists or was ever created. The parties further stipulate Debtor had full dominion and control of *all* settlement funds, upon payment to her, "with the only consequence of not holding them for future 2014 injury medical care being that Medicare might

---

[19] Doc. 33 p. 6 ¶ 30.
[20] Doc. 35.

7

possibly not cover such expenses."[21] After briefing was completed, Debtor again filed amended Schedules A/B and C, which disclosed an "unknown" amount for the "[r]emainder of worker's comp settlement received pre-petition but not spent until post-petition,"[22] and claimed an exemption of that unknown amount under the same Kansas worker's compensation statutes identified above.[23] The Trustee filed an objection to this claimed exemption on the same bases as her prior objection and also argued Debtor's late disclosure that the funds were spent postpetition was not made in good faith.[24] The parties have agreed to submit the second objection to exemption for decision as part of the briefing already completed.[25]

## II. Analysis

The Trustee seeks denial of Debtor's claims of exemption. The Trustee also seeks turnover of the full amount of $23,560.06 received by Debtor postpetition and $6078.68 of the prepetition disbursement, arguing Debtor has not established that amount was spent by Debtor prepetition.

### A. Jurisdiction and Burden of Proof

An objection to exemptions is a core proceeding, arising under title 11, over which this Court has subject matter jurisdiction.[26] Venue is proper in this District.[27]

---

[21] Doc. 48 ¶ 16.

[22] Doc. 52 p. 5.

[23] Doc. 53 p. 3.

[24] Doc. 55.

[25] Doc. 59.

[26] 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A), and Amended Order of Reference, D. Kan. S.O. 13-1.

[27] 28 U.S.C. § 1409(a).

8

The parties filed a final pretrial order, in which they stipulate to the jurisdiction and entry of a final order by this Court.[28]

In a challenge to a claimed exemption, the objecting party—here the Trustee—has the "burden of proving that an exemption was not properly claimed."[29] Regarding the motion for turnover, the Trustee has the burden to "establish a prima facie case that the property sought is property of the estate."[30] If the prima facie case is established, then "the burden shifts to the debtor or opposing party to prove the property is excluded from the estate."[31]

## B. Objection to Exemption

When a debtor files a petition for bankruptcy relief, an estate is created.[32] That bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."[33] Property of the estate is broad in scope.[34] The Bankruptcy Code does, however, permit the exemption of certain

---

[28] Doc. 45.

[29] Fed. R. Bankr. P. 4003(c); *In re Hodes,* 402 F.3d 1005, 1010 (10th Cir. 2005) (addressing the Kansas homestead exemption and concluding the "objecting party bears the burden of proof on an objection to a claimed exemption" by a "preponderance of the evidence"); *In re Lampe,* 331 F.3d 750, 754 (10th Cir. 2003) ("Once a debtor claims an exemption, the objecting party bears the burden of proving the exemption is not properly claimed."). There is some dispute about whether Kansas courts would hold the burden of proof should be placed on a debtor to "establish entitlement to a personal property exception," contrary to Fed. R. Bankr. P. 4003(c) and Tenth Circuit case law which places the burden on the objecting party to disprove entitlement to the exemption, *see In re Lerner,* 611 B.R. 409, 415-16 (Bankr. D. Kan. 2019) (discussing Kansas cases on the issue), but because the Court concludes the Trustee has shown the exemption was not properly claimed and Debtor cannot show she is entitled to claim the exemption, the dispute is immaterial herein.

[30] *In re Rosales*, 621 B.R. 903, 916 (Bankr. D. Kan. 2020).

[31] *Id.*

[32] 11 U.S.C. § 541(a)(1) ("The commencement of a case under . . . this title creates an estate.").

[33] *Id.*

[34] *In re Graves*, 609 F.3d 1153, 1156 (10th Cir. 2010); *see also Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199, 1207 (10th Cir. 2010) ("the scope of § 541 is broad and should be generously construed").

9

property from the estate.[35] Kansas has opted out of using federal exemptions in favor of state-specific exemptions that are "applicable as of the filing date."[36] Under Kansas law, exemption statutes are to be liberally construed for the benefit of the debtor.[37]

Under Kan. Stat. Ann. § 60-2313(a)(3), a Kansas debtor can exempt "worker's compensation exempt from process pursuant to K.S.A. 44-514." Section 44-514 is a subsection of the KWCA. Under Kan. Stat. Ann. § 44-514, "no claim for compensation, or compensation agreed upon, awarded, adjudged, or paid" shall be subject to recovery or collection of a debt, and the "exemption cannot be waived."[38]

### 1. Prepetition Funds

Debtor argues the funds she received prepetition (the net recovery of $16,621.43) are exempt worker's compensation, because the intent of that portion of the settlement was to compensate Debtor for her workplace injury. Debtor points out the worker's compensation exemption includes compensation "agreed upon," and because the Release Agreement designated the funds as compensation for her impairment, they are exempt as worker's compensation.

---

[35] *See* 11 U.S.C. § 522(b)(1) ("Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.").

[36] *Id*. § 522(b)(2)–(3); Kan. Stat. Ann. § 60-2312.

[37] *Hodes v. Jenkins (In re Hodes)*, 308 B.R. 61, 65 (10th Cir. BAP 2004) ("Under Kansas law, exemption statutes are to be liberally construed in favor of those intended by the legislature to be benefitted."); *In re Hall*, 395 B.R. 722, 730 (Bankr. D. Kan. 2008) (stating "the Kansas Supreme Court has directed that exemption claims are to be liberally construed in favor of debtors").

[38] An exception to that exemption is made in Kan. Stat. Ann. § 44-514 for "orders for support," defined as orders from a Kansas court "for the support of a child or for maintenance of a spouse or ex-spouse."

First, Debtor only properly claimed the funds as exempt after briefing had closed on the Trustee's initial objection to exemption. To claim an exemption, a debtor must "file a list of property" claimed exempt, per 11 U.S.C. § 522(l). That list of exempt property should be filed as Official Form 106C—Schedule C.[39] If a debtor files a list of property claimed as exempt under § 522(l), and no party in interest objects,[40] then the property "is exempt." Debtor did not initially claim an exemption in the prepetition funds received, but argued they are exempt in the final pretrial order and in her briefing. After briefing was complete, she then claimed an exemption in the unknown prepetition amount on an amended Schedule C.

Regardless of the delay in claiming the exemption, Debtor's argument concerning the prepetition payment as exempt fails. Kansas has designated a statutory exemption for "worker's compensation" that is exempt *under the KWCA*.[41] The KWCA provides for "compensation to the employee" who "suffers personal injury by accident, repetitive trauma or occupational disease arising out of and in the course of employment."[42] The KWCA then protects from execution the "claim for compensation, or compensation agreed upon, awarded, adjudged, or paid."[43] The

---

[39] Fed. R. Bankr. P. 4003(a) ("A debtor must list the property claimed as exempt under § 522 on Form 106C filed under Rule 1007.").

[40] The time limits for objection are provided in Fed. R. Bankr. P. 4003(b).

[41] Kan. Stat. Ann. § 60-2313(a)(3).

[42] Kan. Stat. Ann. § 44-501b. The compensation is to be paid by the *employer*. *Id.* § 44-501b(b). The KWCA is itself comprehensive and complete, and the only avenue for the injured worker's compensation: "Once it is determined that the employment relationship is covered by the workmen's compensation act, the rights and liabilities of the parties are determined thereunder. The act . . . provides the exclusive remedy for the injured worker. . . . It is well settled that the workmen's compensation act provides the only remedy for injuries which are encompassed within its scope." *Yocum v. Phillips Petrol. Co.*, 612 P.2d 649, 653 (Kan. 1980).

[43] Kan. Stat. Ann. § 44-514(a).

11

bankruptcy exemption is for the "compensation" exempt under the KWCA, and is therefore defined by reference to the KWCA as the compensation awarded under the Act. The funds Debtor received prepetition are from a settlement of a legal malpractice claim based on a failure to pursue worker's compensation for Debtor. The parties to that settlement called the payment "compensation" for Debtor's workplace impairment, but no worker's compensation claim was ever assessed under the KWCA. It is impossible to know how Debtor's claim would have fared under the KWCA, or the amount of compensation she would have received, if any.

Because of these facts, this case is different than the *In re Arellano* case cited by Debtor.[44] In that case, the debtor suffered a prepetition work-related injury and entered into a settlement agreement with his employer and the state, under which he received a lump sum payment of $225,000 and $72,741.88 was paid to the debtor "as a Medicare set aside."[45] The debtor deposited all the money in his bank account, used it to make purchases, and more than two years later he filed a Chapter 7 bankruptcy petition.[46] The debtor claimed the funds and purchases he made with those funds exempt under the federal bankruptcy exemptions and the Chapter 7 trustee objected to the exemption of the property purchased with the funds.[47] The bankruptcy court overruled the objection, concluding the purchases were "traceable to a pre-petition lump sum workers' compensation settlement awarded for the loss

---

[44] 524 B.R. 615 (Bankr. M.D. Pa. 2015).
[45] *Id.* at 617.
[46] *Id.*
[47] *Id.* at 617-18.

12

of future earnings" and could thus be exempted.[48] To the contrary to the facts of this case, the funds at issue herein cannot be "traced" to a worker's compensation settlement.

Rather, the facts here are similar to one of the issues in *In re Sheikhzadeh*.[49] In *Sheikhzadeh*, the debtor asserted medical malpractice claims, but then filed legal malpractice actions related to those medical malpractice claims.[50] All parties agreed that under the exemptions at issue in that case, any award from the medical malpractice claims would be exempt.[51] The debtor argued that because the "legal malpractice claims flow directly from the medical malpractice claims," the legal malpractice claims should also be considered exempt.[52] The bankruptcy court rejected the debtor's claim the legal malpractice claims were exempt, reasoning the settlement of the legal malpractice actions was not "proceeds" of the medical malpractice action.[53] There had been no court award or judgment of *medical* malpractice, the lawyers were paying the settlement of the *legal* malpractice, and there was no case law to support a conclusion the settlement of a legal malpractice claim could be proceeds of a medical malpractice claim.[54]

Likewise, here, attempting to stretch the settlement of the legal malpractice claim as an award of compensation for an exempt worker's compensation claim is

---

[48] *Id.* at 621.

[49] No. 14-14219-BFK, 2018 WL 3197752 (Bankr. E.D. Va. June 26, 2018).

[50] *Id.* at *2-3.

[51] *Id.* at *6.

[52] *Id.*

[53] *Id.* at *7.

[54] *Id.*

13

too far. The legal malpractice claim is not, and could not be, an award of compensation under the KWCA, which is what is entitled to an exemption.[55] As a result, the prepetition funds Debtor received are not exempt under the Kansas exemptions.

### 2. *Postpetition Funds*

Debtor makes alternative arguments about the funds she received postpetition, and one of those alternative arguments is to argue the funds are exempt under the same Kansas exemption statutes discussed above.[56] Regarding the postpetition funds, Debtor's argument is very brief, stating only: "the funds are exempt as workers compensation proceeds intended to be used to pay for any work-related post-award medical treatment resulting from the September 22, 2014 work-related event under the Kansas Workers Compensation Act."[57]

Based on the same reasoning above regarding the prepetition funds, the Court concludes the postpetition funds are not exempt. The argument the postpetition funds are exempt worker's compensation is even more tenuous. Regarding these funds, the Release Agreement refers to payment for "any future medical expenses which are causally related to the accident" or, alternatively, $23,560.06 for "funding a Medicare Set Aside Trust in [such] amount . . . or by

---

[55] *In re Mosby*, 532 B.R. 167, 171 (Bankr. D. Kan. 2015) ("[G]enerally, exemption statutes are liberally construed to give effect to the beneficent purpose. But this does not mean the court should ignore the limitations imposed by the legislature's choice of language."); *Ortiz v. Rajala*, 436 B.R. 133, 135 (D. Kan. 2010) ("Exemptions are construed liberally in favor of debtor; however, courts may not enlarge the exemption or read into it provisions not found there.").

[56] If the funds are not exempt property of her estate, Debtor alternately argues the funds are excluded from property of her estate as a Medicare Set Aside Trust, which will be discussed below.

[57] Doc. 50 p. 11-12.

purchasing an annuity for this amount." The KWCA does allow for the payment of future medical expenses (called "post-award medical benefits"), and so a worker's compensation award could have been made for future medical expenses, but that did not happen here. There is no connection to the funds given in the legal malpractice settlement based on the expectation of future medical costs and an award of worker's compensation under the KWCA.[58] The connection to any worker's compensation award under the KWCA is almost nonexistent. There is no basis to claim as exempt the postpetition funds from the legal malpractice settlement.

### C. Motion for Turnover

Under 11 U.S.C. § 542(a), a person who has "possession, custody, or control" of any property "the trustee may use, sell, or lease" must turn that property over to the trustee of the case, unless the property at issue is of "inconsequential value or benefit to the estate."[59] The turnover provision implements 11 U.S.C. § 521(a)(4) which requires a debtor to "surrender to the trustee all property of the estate."[60] Property interests are defined by state law,[61] but federal bankruptcy law

---

[58] In addition, the KWCA terminates post-award benefits if the injured employee has not "received medical treatment . . . from an authorized healthcare provider within two years from the date of the award or two years from the date the claimant last received medical treatment from an authorized healthcare provider." Kan. Stat. Ann. § 44-510k. The basis for any worker's compensation claim was an injury in 2014, and the Release Agreement settling the legal malpractice claim occurred in December 2023, nearly ten years later. There are no facts in the parties' Joint Stipulation indicating whether Debtor has received continuous medical care for her 2014-workplace injury.

[59] Present possession is not required; only that the debtor had "possession, custody, or control" at some point "during the case." *In re Auld*, 561 B.R. 512, 519 (10th Cir. BAP 2017).

[60] This is necessary because a trustee has the duty under the Bankruptcy Code to collect and liquidate all property of the estate. 11 U.S.C. § 704(a)(1).

[61] *Butner v. United States*, 440 U.S. 48, 55 (1979).

15

establishes the extent to which a property interest is property of the estate.[62] Debtor does not dispute either that the prepetition cash on hand or the contractual expectation at filing of the postpetition amount are property interests.

### 1. Prepetition Funds

Debtor contends she has accounted for a majority of the $16,621.43 she received prepetition, and argues in her briefing if the Court finds the full amount is not exempt, "the only amount subject to turnover is the portion the Debtor had not spent prior to the filing of her bankruptcy."[63] In the final pretrial order, both parties agreed that if no exemption of the prepetition payment applies, then unaccounted-for funds from that prepetition payment are subject to turnover.[64] The parties then filed a Joint Stipulation, identifying the amount of the unaccounted-for funds as $4329.67.[65] The Court therefore concludes the amount of $4329.67 is subject to turnover to the Trustee, and grants that portion of the Trustee's motion for turnover as to that amount from the prepetition funds.

---

[62] *Parks v. FIA Card. Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008).

[63] Doc. 50 p. 6. Debtor's briefing claims this amount is $5128.68, citing the parties' Joint Stipulation No. 11. The Joint Stipulation says that of the $16,621.43, Debtor can account for $12,291.76, Doc. 48 p. 2-3 ¶ 11, which means $4329.67 is unaccounted for. The $5128.68 figure comes from the parties' final pretrial order, which contained different projections of the prepetition amount than the number arrived at in the ultimate Joint Stipulation.

[64] Doc. 45 p. 5 ("[T]he Trustee seeks turnover of up to $6078.68 of the earlier settlement disbursement, which the Debtor has been unable to establish was disbursed pre-petition."); Doc. 45 p. 5 (in Debtor's Theory/Defenses, stating: "If the proceeds received pre-petition are found to be non-exempt, only those funds that cannot be accounted for. . . are subject to turnover.").

[65] Doc. 48 p. 2-3 ¶ 11.

16

## 2. Postpetition Funds

Regarding the postpetition amount, Debtor argues those funds are not subject to turnover because they are not property of the estate. Debtor argues the Release Agreement "established a trust for the benefit of medical providers," specifically what she calls a Medicare Set-Aside Trust.[66] Debtor then argues the "trust funds" are not property of the bankruptcy estate because they are held in either an express trust or a constructive trust and she therefore holds only legal title to the funds.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[67] Although property of the estate is construed broadly,[68] there are statutory exclusions from that definition of property of the estate, and Debtor argues two of those exclusions apply. First, 11 U.S.C. § 541(d) excludes the following:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.[69]

Debtor also argues the postpetition funds are excluded from property of the estate via 11 U.S.C. § 541(c)(2), which states that a "restriction on the transfer of a

---

[66] The Stipulations provided by the parties include exhibits which instead refer to Worker's Compensation Medicare Set Aside "arrangements" or "accounts," rather than "trusts." *See* Doc. 48 Ex. 11 and Ex. 12. According to those exhibits, an "MSA account" functions "as a fund for primary medical coverage" and then Medicare supplies secondary coverage. Doc. 48 Ex. 12 p. 1. The fund is then excluded from being listed as a third-party resource for Medicaid coverage purposes. *Id.*

[67] 11 U.S.C. § 541(a)(1).

[68] *Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199, 1207 (10th Cir. 2010).

[69] 11 U.S.C. § 541(d).

17

beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."[70]

As a threshold matter, for either exclusion to apply, Debtor must establish the existence of a trust. She argues in the alternative for the Court to find either an express trust or a constructive trust.

First, to establish an express trust, there must be (1) the "declaration and intent" to create a trust, (2) a "description of the property," and (3) the acceptance and handling of the subject matter by the trustee as a trust.[71]

The debtor fails each element required to establish an express trust. For the Court to find the declaration and intent to create a trust, there must be an "explicit declaration and intention."[72] To the contrary here, the parties' Joint Stipulation expressly states *no* formal trust document exists or was ever created. Debtor contends the trust intent can be found in the Release Agreement, which contractually requires Williams-Malone, P.A. to pay "any future medical expenses which are causally related to the accident" or, alternatively, $23,560.06 for "funding a Medicare Set Aside Trust in [such] amount . . . or by purchasing an annuity for

---

[70] Even if the Court concluded a trust was created, for 11 U.S.C. § 541(c)(2) to apply, Debtor would also need to show there is a restriction on the transfer of the beneficial interest in the trust and that the restriction is enforceable under nonbankrutpcy law. *See In re McDonald*, 519 B.R. 324, 333 (Bankr. D. Kan. 2014) ("To exclude property from the bankruptcy estate under § 541(c)(2), Debtors must satisfy three criteria. First, they must show that they have a beneficial interest in a trust. Second, they must show that there is a restriction on the transfer of that interest. Third, they must show that the restriction is enforceable under nonbankruptcy law. Debtors bear the burden of proof regarding whether property can be excluded from the bankruptcy estate.") Because the Court concludes no trust was established, it need not address these additional hurdles.

[71] *In re Estate of Morton*, 740 P. 2d 571, 575 (Kan. 1987).

[72] *Taliaferro v. Taliaferro*, 921 P.2d 803, 808 (Kan. 1996).

18

this amount."[73] That figure of $23,560.06 comes from the Medicare Set Aside report obtained by Debtor's legal malpractice counsel, which computed the future medical costs for Debtor pertaining to her workplace injury.

But again, the facts show what actually happened was that Williams-Malone, P.A. paid Debtor the $23,560.06 computed for her future medical costs, perhaps even with the intent those funds be used to establish a Medicare Set Aside Trust, but Debtor instead spent a portion of the money for a trip to visit her brother, and another portion on undocumented items. The remaining $20,000 of the funds was placed in a certificate of deposit. Debtor never actually established a Medicare Set Aside Trust. There are no facts indicating the certificate of deposit was described as a trust or handled as a trust, and there is no designation of a trustee. In fact, Debtor stipulated she has, and had, full dominion and control over all funds paid to her. No element necessary to establish an express trust is present in these facts.[74]

Second, regarding a constructive trust, a constructive trust is an equitable remedy for unjust enrichment, which is shown when a benefit is conferred, that benefit is retained, and under the circumstances, the retention of the benefit would be unjust.[75] Debtor makes no argument to support such a finding, other than

---

[73] Doc. 48 p. 2 ¶ 7.

[74] Again, this makes Debtor's case different than *In re Arellano*, 524 B.R. 615 (Bankr. M.D. Pa. 2015) relied upon by Debtor in her brief. In *In re Arellano*, the bankruptcy court concluded a prepetition settlement agreement between the debtor, his employer, and the state related to a prepetition work-related injury created a Worker's Compensation Medicare Set Aside. *Id.* at 622 ("Debtor's settlement agreement established a trust fund for the benefit of medical providers.") Here, no trust was established, and the settlement was of the legal malpractice claim, not a worker's compensation claim.

[75] *Nelson v. Nelson*, 205 P.3d 715, 724 (Kan. 2009); *see also Est. of Draper v. Bank of Am., N.A.*, 205 P.3d 698, 706 (Kan. 2009) ("[A] constructive trust is an appropriate remedy where a person holding

19

stating the constructive trust should be imposed on the full amount of $23,560.06 "for the benefit of medical providers."[76] Debtor is apparently arguing there is an equitable duty to convey those funds to her medical providers because unjust enrichment would result otherwise. It is unclear if Debtor contends she would be unjustly enriched, the Trustee would be unjustly enriched, or the creditors of her Chapter 7 bankruptcy estate would be unjustly enriched. Unjust enrichment is a remedy imposed when "the circumstances under which the property was acquired make it inequitable that it should be retained by the person who holds the legal title"[77]; Debtor contends she holds legal title.[78]

Again, the facts here do not support a finding a constructive trust should be imposed. As discussed throughout, the certificate of deposit stemmed from the funds paid to Debtor as part of the legal settlement of her claims against her worker's compensation attorney. It is not unjust for the funds to be used for the benefit of the creditors of Debtor's bankruptcy estate rather than being set aside for future,

---

title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it" (internal quotation omitted)).

[76] Doc. 50 p. 12.

[77] *Kampschroeder v. Kampschroeder*, 887 P.2d 1152, 1155 (Kan Ct. App. 1995).

[78] Debtor appears to argue it would be unfair to require her to turnover the money to the Trustee for distribution to her creditors, because in the future Medicare may deny payment of any medical costs related to her workplace injury in 2014. Debtor relies less on attempting to establish the elements of a trust and more on a general "fairness" approach, arguing it is unfair to subject her to Medicare recoupment when the funds should be set aside for that care in the future. The record does contain evidence of Debtor's anticipated future medical costs for her 2014 injury that are typically covered by Medicare, but that does not provide foundation for the argument Medicare is likely to refuse payment for any of her future medical expenses or pursue her for amounts it has already paid. Any such argument would be entirely speculative. The governing regulations indicate Medicare is the secondary payer behind worker's compensation only as to payments made or reasonably expected to be made "under a workers' compensation law or plan of the United States or a state." *See* 42 C.F.R. § 411.40(b)(1)(i). In other words, even if a Medicare Set-Aside trust had been established, which it was not, the applicable regulations apply only to state approved compensation for a work-related injury.

contingent, unknown, medical costs, especially when there has been no showing that Medicare has any priority to such funds for reimbursement for medical expenses it has paid on Debtor's behalf, or that Medicare, under these facts, has any ability to avoid its obligation to be a primary payor for any of Debtor's future expenses.

Because Debtor's case was filed as a no-asset Chapter 7, and the Trustee has not yet recovered any funds for distribution, no claims have yet been filed in the case. But based on Debtor's self-disclosed Schedule E/F, which lists Debtor's unsecured claims at filing, a portion of her debt already includes medical debt.[79] Debtor has provided no basis to impose a constructive trust to prefer one future medical payor, or certain medical providers, over prior medical providers.

Because Debtor has not established the existence of a trust, express or constructive, the postpetition funds are not excluded from property of the estate under 11 U.S.C. § 541(d). In addition, even if she had, there are no facts establishing a restriction on transfer of the funds, such that the postpetition funds would be excluded from property of the estate under 11 U.S.C. § 514(c)(2).[80] As a

---

[79] See Doc. 1 p. 17-22 (Schedule E/F, listing claims of $1270 to Centura Health, $130 to Global Bone and Joint Clinic, and $4748 to Minneola Healthcare).

[80] If a trust had been established it would be a self-settled revocable trust, subject to the claims of Debtor's creditors. See Kan. Stat. Ann. § 58a-505(1) ("During the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors.") and Kan. Stat. Ann. § 58a-103(13) ("'Revocable,' as applied to a trust, means revocable by the settlor without the consent of the trustee or a person holding an adverse interest."). See also Commerce Bank, N.A. v. Bolander, 239 P. 3d 83, 92 (Kan. Ct. App. 2007) ("When a trust is created for the settlor's own benefit, the settlor's creditors can reach any trust assets and, for purpose of the present case, those nonexempt assets available to the settlor."). Because there is no restriction on transfer on the funds Debtor is holding—and no trust at all—section 541(c)(2) does not apply to exclude the funds from property of the estate. See, e.g., 5 Collier on Bankruptcy ¶ 541.27 (Richard Levin & Henry J. Sommer eds., 16th ed.) (discussing the §

result, the postpetition funds are not excluded from property of the estate, and as property of the estate, they are subject to turnover under 11 U.S.C. § 542(a).

## III.   Conclusion

The Court sustains the Chapter 7 Trustee's objections to exemption of both the prepetition and postpetition funds.[81] The Court grants the Trustee's motion for turnover[82] in part, granting turnover of $4329.67 of the prepetition funds and the full amount ($23,560.06) of the postpetition funds.

**It is so Ordered.**

# # #

---

541(c)(2) exclusion of spendthrift trusts from property of the estate and noting: "If the trust does not have a spendthrift clause (or there is a spendthrift provision but it is not valid under applicable law), every right of the debtor under the trust becomes property of the estate.").

[81] Doc. 37 and Doc. 55.

[82] Doc. 25.